FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 16, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARGARET G.,[1] | No. 1:20-cv-03164-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| | ECF Nos. 17, 18 |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 17, 18. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 17, and denies Defendant's motion, ECF No. 18.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

ORDER - 2

416.920(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

1  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

2  gainful activity," the Commissioner must find that the claimant is not disabled.  20

3  C.F.R. § 416.920(b).

4      If the claimant is not engaged in substantial gainful activity, the analysis

5  proceeds to step two.  At this step, the Commissioner considers the severity of the

6  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

7  "any impairment or combination of impairments which significantly limits [his or

8  her] physical or mental ability to do basic work activities," the analysis proceeds to

9  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

10  this severity threshold, however, the Commissioner must find that the claimant is

11  not disabled.  *Id.*

12      At step three, the Commissioner compares the claimant's impairment to

13  severe impairments recognized by the Commissioner to be so severe as to preclude

14  a person from engaging in substantial gainful activity.  20 C.F.R. §

15  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

16  enumerated impairments, the Commissioner must find the claimant disabled and

17  award benefits.  20 C.F.R. § 416.920(d).

18      If the severity of the claimant's impairment does not meet or exceed the

19  severity of the enumerated impairments, the Commissioner must pause to assess

20  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

ORDER - 5

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 13, 2017, Plaintiff applied for Title XVI supplemental security

income benefits alleging a disability onset date of January 1, 2017.  Tr. 15, 75,

198-203.  The application was denied initially, and on reconsideration. Tr. 106-09,

115-21.  Plaintiff appeared before an administrative law judge (ALJ) on October 8,

2019.  Tr. 32-74.  On October 22, 2019, the ALJ denied Plaintiff's claim.  Tr. 12-

31.

At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since March 13, 2017.  Tr. 17.  At step

two, the ALJ found that Plaintiff has the following severe impairments: obesity,

anxiety, depression, joint effusion and internal derangement of the right knee,

bilateral knee osteoarthritis, and bilateral knee degenerative joint disease.  *Id*.

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  *Id*.  The ALJ then concluded that Plaintiff has the RFC to perform

sedentary work with the following limitations:

ORDER - 6

> [Plaintiff] can never climb ladders, ropes, or scaffolds; she cannot work at unprotected heights or in proximity to hazards (such as heavy machinery with dangerous moving parts); she can occasionally climb ramps and stairs, balance, and stoop, but she can never kneel, crouch, or crawl; she can perform work in which concentrated exposure to extreme cold, heat, wetness, pulmonary irritants, and vibration are not present; she can understand, remember and carry out simple, routine tasks and follow short, simple instructions; she can perform work that requires little or no judgment, and she can perform simple duties that can be learned on the job in a short period; she can cope with occasional work setting change and occasional, routine interaction with supervisors; she can work in proximity to coworkers, but not in a team or cooperative effort; she can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public is not precluded. Within these parameters, she can meet ordinary and reasonable employer expectations regarding attendance, production, and work place behavior as well as persist, focus, concentrate, and maintain an adequate pact in 2 hour increments.

Tr. 18-19.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as table worker, toy stuffer, and touch up screener. Tr. 25. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision. *Id.*

ORDER - 7

On August 10, 2020, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her supplemental security income benefits under Title XVI of the Social Security

Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence; and

3. Whether the ALJ conducted a proper step-five analysis.

ECF No. 17 at 2.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting her symptom claims.  ECF No. 17 at 3-10.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

ORDER - 8

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted). General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.

Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims)). "The clear and

convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.

Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

ORDER - 9

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence.  Tr. 19.

### 1. Inconsistent Objective Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the

objective medical evidence.  Tr. 20-21.  An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

The ALJ found Plaintiff's mental health symptom complaints were inconsistent with the objective evidence. Tr. 20-21. As discussed *infra,* the ALJ found Plaintiff had improvement in her mental health symptoms with medication. In March 2017, when unmedicated, Plaintiff was anxious, depressed, and tearful, Tr. 563, and she started taking medication in April 2017; in April, she had abnormal speech and thought processes, and was tearful and anxious, and her medications were changed, Tr. 561-62. At the end of April 2017, Plaintiff reported her anxiety had gotten much better, but she remained agitated with irritable speech, and she had another medication change, Tr. 560, and in May she reported difficulties with Seroquel and had more medication changes, Tr. 558-59. In late May 2017, Plaintiff reported feeling much better, and her psychomotor agitation had stopped, she smiled and laughed during the appointment, and had a normal mental status examination, Tr. 557, and at the next appointment, she reported no anxiety attacks for several days, and again had a normal mental status examination, Tr. 556. In June 2017, Plaintiff was anxious and tearful, with a blunted affect at one appointment, but otherwise had normal examinations, and still had not made

an appointment with a counselor, Tr. 554-55.  In July 2017, Plaintiff reported she

was doing "really well" on her medications and psychological findings were

normal, Tr. 553.  In August 2017, Plaintiff had a blunted affect but otherwise

normal examination, and reported a stable mood, Tr. 551, and in September 2017

she reported still feeling stable, Tr. 550.  These records demonstrate consistent

improvement with medication, and generally normal findings when Plaintiff took

her medication.

Plaintiff argues the record is consistent with her allegations, as the records

demonstrate abnormalities, including Plaintiff being tearful, anxious, depressed,

irritable, and tangential, with pressured speech, psychomotor agitation, and

impaired recall, fund of knowledge, and insight/judgment at some appointments.

ECF No. 17 at 4 (citing, e.g., Tr. 320-32, 376, 555, 557-61, 563).  Plaintiff's

citations largely come from an April 2017 examination, Tr. 320-22, and

appointments during the same time period, from March through June 2017, Tr.

555, 557-61, 563.  These appointments reflect Plaintiff's functioning when she was

not taking her mental health medications in March, and when she just began taking

medication again in April 2017, which required several medication adjustments.

Tr. 20 (citing Tr. 317, 556-57); Tr. 560-61, 563.  As discussed herein, the records

demonstrate Plaintiff's symptoms significantly improved with medication

adjustments.  There is limited evidence related to Plaintiff's mental health

ORDER - 12

symptoms in 2018 and 2019, and the limited references in emergency department visits all document normal psychological findings.  Tr. 376, 403, 430-31, 458, 463, 467, 471, 474, 478.  Plaintiff does not cite to any records that demonstrate ongoing mental health symptoms in 2018 nor 2019.  On this record, the ALJ reasonably found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  This was a clear and convincing reason, along with the other reasons offered, to reject Plaintiff's symptom claims.

### 2.  Lack of Treatment

The ALJ found Plaintiff's symptom allegations were inconsistent with her lack of treatment.  Tr. 20-21.  An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment).  When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is

inconsistent with the alleged severity of complaints.  *Molina*, 674 F.3d at 1113-14.

But when the evidence suggests lack of mental health treatment is partly due to a

claimant's mental health condition, it may be inappropriate to consider a

claimant's lack of mental health treatment when evaluating the claimant's failure

to participate in treatment.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Social Security Ruling 16-3p instructs that an ALJ "will not find an individual's

symptoms inconsistent with the evidence in the record on this basis without

considering possible reasons he or she may not comply with treatment or seek

treatment consistent with the degree of his or her complaints."  Social Security

Ruling ("SSR") 16-3p at *8 (March 16, 2016), *available at* 2016 WL 1119029.

First, the ALJ found Plaintiff did not seek ongoing treatment for her mental

health symptoms.  Tr. 20.  The ALJ noted Plaintiff repeatedly stopped taking her

psychotropic medication.  *Id.*  Providers also recommended counseling, but

Plaintiff did not pursue counseling.  *Id.*  The ALJ considered Plaintiff's testimony

that she lacked transportation for counseling appointments, but the ALJ noted

Plaintiff's significant other provided her with transportation to other appointments

during the period when counseling was recommended.  *Id.*  Plaintiff argues her

significant other worked and could not provide transportation at all times, ECF No.

17 at 5 (citing Tr. 51), and argues her fear of becoming like her mentally ill mother

may have impacted her resistance to mental health treatment, ECF No. 17 at 5

ORDER - 14

(citing Tr. 350).  Plaintiff also points to her history of seeking counseling and cites to a note where Plaintiff self-reported having a counseling appointment but does not cite to any medical records that document that Plaintiff attended counseling during the relevant adjudicative period.  ECF No. 17 at 5.  Plaintiff also argues she had side effects from her medication, and she then had a period of homelessness and lacked resources to obtain care, which impacted her ability to take her medication.  ECF No. 17 at 6.

Plaintiff testified at her October 2019 hearing that she had stopped her mental health medications at the beginning of 2019, and stated they were making her drowsy and she did not want to take them any longer.  Tr. 41-42.  However, Plaintiff continued to seek treatment for her physical symptoms in 2019 and did not mention issues with her mental health medications.  Tr. 376, 402.  While Plaintiff reported side effects from Seroquel in 2017, Tr. 559, there is no evidence Plaintiff was put on Seroquel in 2019, *see* Tr. 397-98.  Plaintiff does not point to any other evidence of her mental health medications causing side effects.  Plaintiff stated she did not have transportation to go to counseling, she had lost her housing, and she was overwhelmed trying to figure out how to start counseling.  Tr. 42, 46. Plaintiff reported she had not looked into transportation options to get to appointments.  Tr. 45.  Despite her reported lack of transportation and difficulty accessing counseling, Plaintiff was able to make it to the emergency department

and to the clinic for treatment for her physical symptoms on multiple occasions in 2017 through 2019.  Tr. 376, 402, 430, 443, 457, 462, 466, 470, 473, 518, 525, 549.  While Plaintiff offers a different interpretation of the evidence, the ALJ reasonably found Plaintiff's lack of treatment was inconsistent with her mental health symptom allegations.

Second, the ALJ found Plaintiff's allegations were inconsistent with her lack of treatment for her physical symptoms.  Tr. 20-21.  Plaintiff did not take any pain medication for her reported pain.  Tr. 21.  Plaintiff reported taking Aleve, but the ALJ noted Aleve was not documented in treatment records.  *Id.*  A provider suggested physical therapy, but Plaintiff did not pursue physical therapy.  *Id.*  Her provider also recommended exercise, being physically active, and losing weight, and the ALJ noted there is no evidence Plaintiff followed the recommendations. *Id.*  Plaintiff does not offer a reason why she declined to take pain medications, but argues she took naproxen, which is an active ingredient in Aleve.  ECF No. 17 at 8. Naproxen is listed as one of Plaintiff's medications, Tr. 361, but Plaintiff otherwise reported treating her pain with resting and elevating her legs, and she reported taking no pain medication, Tr. 360.  Plaintiff reported she had too much pain to do physical therapy.  Tr. 41.  Plaintiff argues she was never referred to physical therapy, ECF No. 17 at 9, however medical records indicate the plan was for Plaintiff to attend physical therapy, Tr. 354, 362, 483, 487, 499, 509.  Plaintiff also

ORDER - 16

discussed pool physical therapy with another provider.  Tr. 556.  Plaintiff reported

she had physical therapy without improvement, Tr. 473, but there are no physical

therapy records in the file.

        SSR 18-3 clarifies that failure to follow prescribed treatment does not

include lifestyle modifications such as dieting or exercise, however any error in the

ALJ's consideration of Plaintiff's lack of exercise and weight loss is harmless,

because the ALJ offered other supported reasons to discount Plaintiff's claims, as

discussed herein.  *See Molina,* 674 F.3d at 1115.  While Plaintiff argues she had

ongoing care for her physical symptoms and she complied with treatment, ECF

No. 17 at 9-10, Plaintiff has taken over the counter medication, treated her pain

with ice and raising her legs, and had injections.  This level of conservative care is

not consistent with Plaintiff's allegations of disabling pain.  *See Parra v. Astrue*,

481 F.3d 742 (9th Cir. 2007); *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th

Cir. 2010).  The ALJ's finding that Plaintiff's symptom claims are inconsistent

with her minimal treatment is supported by substantial evidence.  This was a clear

and convincing reason to reject Plaintiff's symptom claims.

        *3. Improvement with Treatment*

        The ALJ found Plaintiff's symptom allegations were inconsistent with her

improvement with treatment.  Tr. 20-21.  The effectiveness of treatment is a

relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §

416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

First, the ALJ found Plaintiff's mental health symptoms improved with treatment. Tr. 20. Plaintiff reported feeling better, calmer, and more mellow with medication, and reported she had a stable mood and her anxiety attacks had stopped. *Id.* (citing Tr. 550-51, 556-57). Plaintiff reported doing well, with no depression and anxiety, when she was taking her medication in March 2019. Tr. 21 (citing Tr. 376, 398). Plaintiff also reported improved sleep. Tr. 555-56. Plaintiff argues she had minimal improvement in her mental health symptoms with treatment, because even with medication, she continued to be tearful and anxious and reported ongoing symptoms at one appointment, and two providers opined Plaintiff had disabling limitations. ECF No. 17 at 6-7 (citing Tr. 555). While Plaintiff was anxious and tearful, the provider also noted Plaintiff had normal speech, thoughts, judgment, orientation, memory, attention, language, and fund of knowledge. Tr. 555. Prior to starting a mood stabilizer, Plaintiff was tearful and agitated, with impaired sleep. Tr. 558. Plaintiff's psychological findings after starting medication were generally normal, including normal mood, affect, thoughts, judgment, orientation, memory, attention, language, and fund of

knowledge.  Tr. 555-57.  The ALJ reasonably found Plaintiff had improvement in her mental health symptoms with treatment.

Next, the ALJ found Plaintiff's physical symptoms improved with treatment. Tr. 20.  Plaintiff reported improvement with steroid injections in her knees.  *Id.* (citing Tr. 484, 488, 500).  Plaintiff argues she had minimal improvement in her physical symptoms with treatment because even with injections she still had pain rated at a seven out of 10, and she continued to have an antalgic gait, limited range of motion, tenderness, swelling, and limited strength.  ECF No. 17 at 8 (citing Tr. 354, 360, 458, 462, 473, 477, 480, 492, 504).  However, Plaintiff rated her left knee pain as a six to seven out of 10 prior to getting injections, Tr. 492, 504, and then rated her pain as three out of 10 at her second injection appointment, Tr. 488, and four out of 10 when she went in for her third injection in November 2017, Tr. 484, although she still had a mildly to moderately antalgic gait, and impaired strength and range of motion in her left lower extremity, Tr. 485, 489, 493. Similarly, Plaintiff reported her right knee was improving with injections, and her pain was a four out of 10 after two injections, although she had some ongoing symptoms.  Tr. 496.  Despite ongoing knee symptoms in 2019, Plaintiff was advised to take medication and ice her knee, and she was repeatedly noted to have a steady gait with no abnormalities.  Tr. 377-78, 403, 528.  This was a clear and

convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 4. Situational Factors

The ALJ found Plaintiff's reported symptoms were impacted by situational factors. Tr. 21. If a claimant suffers from limitations that are transient and result from situational stressors, as opposed to resulting from a medical impairment, an ALJ may properly consider this fact in discounting Plaintiff's symptom claims. *See Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (symptom testimony properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational"); *but see Bryant v. Astrue*, No. C12-5040-RSM-JPD, 2012 WL 5293018, at *5–7 (W.D. Wash. Sept. 24, 2012) (concluding Plaintiff's stressors appeared to have a constant presence affecting ability to work on a continuing basis, rather than temporary exacerbation).

The ALJ noted Plaintiff reported going "downhill" in April 2019, after losing her housing. Tr. 21. Plaintiff reported she stopped taking her psychotropic medication and she stopped seeing treating providers, and she experienced an increase in her symptoms. *Id.*, Tr. 41-42, 46-47, 457. Plaintiff argues her symptoms predated the situational stressor. ECF No. 17 at 10. However, as discussed *supra,* when Plaintiff sought treatment, she reported improvement in

both her mental health and physical symptoms.  Thus, the ALJ reasonably

considered that Plaintiff's situational stressor was a factor in her recent symptom

exacerbation.  This was a clear and convincing reason to reject Plaintiff's symptom

claims.  Plaintiff is not entitled to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in her consideration of the opinions of

Valentin Antoci, M.D.; N.K. Marks, Ph.D.; Kristen Nestler, M.D.; Menelo

Lilagan, M.D.; and Janis Lewis, Ph.D.  ECF No. 17 at 11-20.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists."  *Id*. (citations omitted).

ORDER - 21

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff filed her application for benefits on March 13, 2017.  Tr. 15. Therefore, the old medical opinion regulations apply to this case.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 416.920c, 416.927.  The ALJ stated she considered the opinion evidence in accordance with 20 C.F.R. § 416.927.  Tr. 19.  However, instead of setting forth an analysis of the weight given to the opinions, as required under the old regulations, the ALJ instead discussed the

ORDER - 22

persuasiveness of each opinion, which is the standard under the new regulations. Tr. 21-24. The ALJ also repeatedly discussed the consistency of opinions with the objective evidence and other opinions. Tr. 21-24. Consistency is one of the two most important factors under the new medical regulations. 20 C.F.R. § 416.920c. The ALJ labeled each doctor as an examiner, treating provider, or reviewing doctor, but did not otherwise discuss the opinions in relation to the doctor's relationship with Plaintiff, such as the frequency of treatment or length of relationship. Tr. 21-24. The ALJ also did not discuss whether several of the opinions were contradicted or not, and thus did not address whether the specific and legitimate or clear and convincing opinion would apply to the opinion.

Defendant argues the ALJ cited to the correct regulation, and specific wording that the ALJ weighed opinions is not required. ECF No. 18 at 10. However, the ALJ's decision lacks any analysis under the proper regulations. The old regulations assigned varying weight to opinions based on the relationship of the doctor to the claimant, while the new regulations no longer require the ALJ to give any specific evidentiary weight to any medical opinions. *Holohan,* 246 F.3d at 1202; *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a). As the ALJ's analysis appears to forth an analysis under the new regulations, the Court cannot determine if the ALJ afforded varying weight to the medical opinion based in part on the doctor's relationship with the

ORDER - 23

1   Plaintiff, as required under the old regulations.  As such, the Court finds the ALJ

2   harmfully erred in not setting forth an analysis of the opinions under the

3   appropriate regulations.  *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir.

4   2017); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (citing

5   *Bray,* 554 F.3d at 1222; *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)

6   (requiring that a Commissioner's decision be free of "legal error")).

7        On remand, the ALJ is instructed to reconsider the medical opinions and set

8   forth an analysis of the opinions under the correct regulations.

9   **C. Step Five**

10       Plaintiff contends the ALJ erred at step five by relying on vocational expert

11  testimony that was unsupported the evidence.  ECF No. 17 at 20-21.  Plaintiff

12  argues the jobs identified at step five do not exist in significant numbers.  *Id.*  At

13  step five of the sequential evaluation analysis, the burden shifts to the

14  Commissioner to establish that (1) the claimant is capable of performing other

15  work; and (2) such work "exists in significant numbers in the national economy."

16  20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389.  There is no "bright-line rule

17  for what constitutes a 'significant number' of jobs."  *Beltran*, 700 F.3d at 389.

18  "There are two ways for the Commissioner to meet the burden of showing that

19  there is other work in 'significant numbers' in the national economy that claimant

20  can do: (1) by the testimony of a [VE], or (2) by reference to the Medical-

ORDER - 24

Vocational Guidelines...." *Id.* As the case is being remanded for the ALJ to reconsider the medical opinion evidence, the ALJ is also instructed to perform the step five analysis anew.

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No.17 at 11-12, 17.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed

1  to provide legally sufficient reasons for rejecting evidence, whether claimant

2  testimony or medical opinion; and (3) if the improperly discredited evidence were

3  credited as true, the ALJ would be required to find the claimant disabled on

4  remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874

5  F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied,

6  the Court will not remand for immediate payment of benefits if "the record as a

7  whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759

8  F.3d at 1021.

9          The Court finds further proceedings are necessary for the ALJ to resolve

10  conflicts in the evidence, including conflicts between the medical opinions, and

11  conflicts between the medical opinions and the objective medical evidence.

12  Further, the record as a whole creates serious doubt that Plaintiff is disabled.

13  Despite Plaintiff's report to an examiner that she has a "good job history," Tr. 317,

14  Plaintiff has never worked at a substantial gainful activity level, Tr. 205-06.  There

15  is evidence she used methamphetamine during the relevant period, Tr. 443, and the

16  Social Security field office employee noted Plaintiff "sounded like she was on

17  drugs," Tr. 223.  Plaintiff also reported she was incarcerated during an unspecified

18  period of time.  Tr. 318.  This evidence suggests Plaintiff's unemployment may be

19  due to reasons other than her impairments.  As such, the case is remanded for

20  further proceedings consistent with this Order.

ORDER - 26

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 16, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 27